1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR EUGENE HERRERA, | Case No. 1:20-cv-01026-SAB |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND CLOSING THIS CASE |
| Defendant. | (ECF Nos. 19, 22, 23) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Arthur Eugene Herrera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons set forth below, the Court recommends that Plaintiff's Social Security appeal be denied.

/ / /
/ / /
/ / /
/ / /

1

## II.

## BACKGROUND

### A.    Procedural History

On August 23, 2017, Plaintiff filed a Title XVI application for supplemental security income alleging a period of disability beginning on July 2, 2009.  (Admin. Rec. ("AR") 15, 152, 177, ECF No. 10-1.)[1]  Plaintiff's application was initially denied on September 26, 2017, and denied upon reconsideration on November 14, 2017.  (AR 80, 89.)  On September 10, 2019, Plaintiff appeared for a hearing before Administrative Law Judge Mary P. Parnow (the "ALJ").  (AR 31-54.)  On October 30, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 15-26.)  The Appeals Council denied Plaintiff's request for review on May 20, 2020.  (AR 1-6.)

Plaintiff filed this action on July 23, 2020.  (ECF No. 1.)  On February 19, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 10.)  On June 23, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 19.)  On August 31, 2021, Defendant file an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 22.)  On September 14, 2021, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 23.)

### B.    Hearing Testimony

Plaintiff appeared with counsel on September 10, 2019, for a hearing before the ALJ.  (AR 31.)  Plaintiff was 59 years old on the date of the hearing.  (AR 35.)  Plaintiff reached the twelfth grade, but did not graduate high school, and did not receive a GED.  (AR 35-36.)  Plaintiff last worked in 2006 as a laborer in the janitorial field.  (AR 36.)  The heaviest Plaintiff lifted was about 20 pounds of garbage.

Counsel amended the onset date to August 23, 2017, the date of application.  (AR 37.)  Counsel then examined Plaintiff.  Plaintiff did not work a job where he made more than a thousand dollars per month, in the last fifteen years.  Plaintiff worked putting up voting signs in

---

[1] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

1   2018.  (AR 37-38.)

2       Plaintiff stated the primary issues keeping him from working were his back problems and

3   his hands.  (AR 38.)  Plaintiff stated his back pain on an average day was at a level 8 out of 10,

4   with the pain shooting down his legs to his knees on both legs, but doesn't go to his feet.  (AR

5   38-39.)  Plaintiff confirmed he had surgery on his left hand, and began stating he was going to

6   have surgery on the right hand next month.  (AR 39.)  Prior to the surgery, Plaintiff's left wrist

7   pain was at a level 10, because in the winter the hands would get extremely cold and feel like

8   they were going to fall off.  (AR 40.)  Following surgery, Plaintiff's left hand pain stayed at a

9   level 8.  Plaintiff is right-handed.

10      Plaintiff gets bad migraine headaches about once per month that last about half an hour.

11  Plaintiff had some visits with the heart doctor, but stated his heart is good, and takes minor

12  medications such as baby aspirin.  (AR 41.)  Plaintiff had a kidney/renal problem, but stated the

13  status was now "fine," but now his liver has fatty tissue around it, so he needs to lose weight.

14      Plaintiff has asthma and an inhaler.  In 2011, Plaintiff punctured his lung in a car

15  accident, and it is now hard for him to do things.  (AR 41-42.)  Plaintiff confirmed he only used

16  the inhaler about once a month, but more when it is hot.  (AR 42.)

17      Plaintiff stated he can only stand for about half an hour before having to sit down.

18  Plaintiff stated he could be on his feet a total of about four hours a day, shifting up and down.

19  Plaintiff stated he could do so five days a week for a job.  (AR 43.)  Plaintiff can walk about two

20  blocks before having to take a break or stop.  After walking up and down a flight of stairs,

21  Plaintiff breathes hard and has pain in the hip.

22      Plaintiff stated he can lift and carry about 20 pounds comfortably.  Plaintiff can sit in a

23  chair about 30 minutes.  Plaintiff stated he could only sit for about an hour or two throughout a

24  work day, and thus it is more difficult to sit throughout the day than to stand.  (AR 43-44.)

25      Plaintiff stated he can open a door handle but can't carry stuff because his grip issues

26  make things fall out of his hands.  (AR 44.)  Plaintiff stated his left finger was cut off and sewed

27  back on, so he can't make a complete fist.  Plaintiff stated he can't hold a water bottle with his

28  left hand because it would slip off.  Plaintiff stated he cannot type, or use a pencil with his

1  fingers, but more specifically, that he can hold the pencil but his hand starts shaking.

2  Plaintiff lives in a house with his mother. (AR 44-45.) Plaintiff is able to cook for

3  himself at home. (AR 45.) Plaintiff can clean, and confirmed he could clean a full bathroom by

4  himself. Plaintiff confirmed he is able to go to the grocery store and shop for groceries by

5  himself. Plaintiff has a driver's license, though has some difficulty driving at night due to vision

6  issues. As for his hands holding the steering wheel, Plaintiff stated they cramp up, but he can do

7  it and it depends. Plaintiff stated he can't drive a long distance because of the hands cramping

8  up. (AR 46.)

9  Plaintiff was asked about hobbies in 2017 before filing for disability, that he cannot do

10  now. (AR 46.) Plaintiff stated he used to do woodworking and work on his bike, but can't do

11  that now because he can't grip things and they just fall out of his hands.

12  The ALJ asked how Plaintiff supported himself since 2006, and Plaintiff answered that he

13  was incarcerated most of that time, until his release in 2014, though he had "been in and out

14  since then." (AR 46.)

15  A vocational expert Mr. Leath ("VE") presented testimony. (AR 46-47.) Because the

16  VE had some questions regarding past construction work, the ALJ then examined Plaintiff again.

17  The ALJ questioned Plaintiff about whether the laborer position was as a custodian, or in

18  construction, or whether these were different jobs within the last 15 years. (AR 47.) Plaintiff

19  stated he worked at a construction cleaning business as a laborer in 2007. (AR 48.) Plaintiff

20  stated he would operate a Bobcat, work with a shovel, and drive a dump truck. Plaintiff stated

21  the heaviest weight he lifted on a regular basis was 20 pounds, the same as the custodian

22  position. Plaintiff confirmed the construction job was full time. (AR 48-49.)

23  The VE then testified again. The VE classified the work as a composite job comprised of

24  two components: (1) construction worker II, DOT code 869.687-026, SVP 2, heavy; and (2)

25  industrial truck operator, DOT code 921.683-050, SVP 3, medium. (AR 49.) The VE classified

26  the custodian job as cleaner, housekeeping, DOT code 323.687-014, SVP 2, light.

27  Counsel confirmed that there were no functional assessments from any treating source,

28  no residual functional capacity ("RFC"), and no consultative exam. (AR 49.)

1    The ALJ presented a hypothetical person of the same age and education/work experience
2    as Plaintiff, who is capable of a full range of medium work.  (AR 50.)  The VE stated that would
3    rule out the cleaner/housekeeper job, but testified there were the following jobs in the national
4    economy: (1) cleaner positions, DOT code 869.687-018, SVP 2, medium, with 100,000 jobs
5    nationally; (2) packager positions, DOT code 920.587-018, SVP 2, medium, with 1,000 jobs
6    nationally; and (3) laundry worker positions, DOT code 361.685-018, SVP 2, medium, with
7    60,000 jobs nationally.  (AR 50.)

8    Plaintiff's counsel then presented a hypothetical person limited to a full range of light
9    work, who can lift 20 pounds occasionally and 10 pounds frequently; can sit, stand, or walk six
10   hours in an eight hour day, with no exposure to pulmonary irritants, and the VE confirmed that
11   past work be precluded.  (AR 51.)  The VE also confirmed there would be no transferable skills.

12   Counsel then presented a hypothetical without the pulmonary irritants but the same
13   limitations, in addition to being limited to standing or walking only four hours of the day, and the
14   VE confirmed that would preclude past relevant work.  (AR 51.)  The VE again confirmed there
15   would be no transferable skills.  (AR 51-52.)

16   Counsel then presented a hypothetical person that can stand four hours in a work day, but
17   added the pulmonary irritant restriction back, and limited the hands bilaterally to occasional use
18   for gripping, grasping, fingering, gross and fine.  (AR 52.)  The VE stated that would preclude all
19   work.

20   A final hypothetical person had to miss 3 days of work per month, and the VE stated that
21   would preclude all work.  (AR 53.)

22   **C.     The ALJ's Findings of Fact and Conclusions of Law**

23   The ALJ made the following findings of fact and conclusions of law as of the date of the
24   decision, October 30, 2019:

25   •   Plaintiff has not engaged in substantial gainful activity since August 23, 2017, the
26       application date.

27   •   Plaintiff has the following severe impairments: lumbar spondylosis, and obesity.

28   •   Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c).

- Plaintiff is capable of performing past relevant work as a cleaner/housekeeper (unskilled/light exertion), DOT 869.387-026. This work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, since August 23, 2017, the date the application was filed.

(AR 17-26.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., and Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a *whole*, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

/ / /

/ / /

# IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises two primary challenges in this appeal: (1) that the ALJ's step two determination that Plaintiff's carpal tunnel syndrome ("CTS")[3], and other hand/wrist conditions, were not severe, is not supported by substantial evidence; and (2) that the ALJ's RFC determination was unsupported by substantial evidence because the ALJ failed to obtain a medical opinion regarding Plaintiff's remaining ability to perform work-like functions.  (Br. 5.)

### A.    Whether the ALJ Erred in the Step Two Determination

#### 1.    General Legal Standards

At step two of the five-step process, the ALJ assesses the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for at least a consecutive 12-month period.  See 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  If there is not any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities, the claimant will be found to not have a severe impairment and he or she would not be disabled.  20 C.F.R. § 404.1520(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20 C.F.R § 404.1522(b).  This includes,

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work

---

[3]  The parties' briefing does not always clearly distinguish between cubital tunnel syndrome, and carpal tunnel syndrome, Dr. Wong's assessments of each condition as to both the right and left sides, and the ALJ's handling of the respective conditions.  The Court will generally review and analyze the arguments from the parties as being applicable to both conditions and the ALJ's analysis of both, except where critical to the ALJ's respective determination.  The Court will more generally refer to Plaintiff's ailments as "hand/wrist conditions," except where necessary for a specific aspect.

situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

At step two, the claimant has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); Bowen v. Yuckert, 482 U.S. 137, 148 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment").   "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.' "   Smolen, 80 F.3d at 1290 (citations omitted).   Courts have found that step two is "a de minimis screening device [used] to dispose of groundless claims."   Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. No. 85–28 (1985); Smolen, 80 F.3d at 1290).   "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['s ability to work.' "   Smolen, 80 F.3d at 1290 (citing SSR 85-28).   Step two is a "de minimis screening devise to dispose of groundless claims."   Id.; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (same).   An ALJ can only find that claimant's impairments or combination of impairments are not severe "only when his conclusion is 'clearly established by medical evidence' ".   Webb, 433 F.3d at 687 (quoting S.S.R. 85-28).   Thus, this Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Id.

In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity.   Smolen, 80 F.3d at 1290.

Symptoms are not medically determinable physical impairments and cannot by themselves establish the existence of an impairment. Policy Interpretation Ruling Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment. Id. "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings . . . In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process." Id.

If the ALJ finds some severe impairment(s) exist, then she will proceed to consider all impairments—severe and non-severe—in the subsequent steps. See 20 C.F.R. § 416.923(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."). Even if an ALJ errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers limitations resulting from the impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Burch v. Barnhart, 400 F.3d 676 (9th Cir.2005); see also Petersen v. Barnhart, 213 F. App'x 600, 605 (9th Cir. 2006) ("In *Burch*, the ALJ discussed the claimant's obesity and considered it in his RFC analysis . . . However, he did not mention obesity in his step two analysis . . . The *Burch* court assumed without deciding that this was legal error but

1   concluded that the error was harmless because it would not have impacted the ALJ's analysis at

2   either step four or five. . . . at step five, the ALJ explicitly noted the impact of the claimant's

3   obesity on her back problems . . . Given that the ALJ in this case did not address Petersen's

4   weight in either the step two *or* step five contexts, the ALJ's failure to consider the impact of her

5   obesity cannot be considered harmless error under *Burch*.").

6       2.    The Relevant Medical Records and Findings of the ALJ

7           After a January 2018 left hand/wrist surgery, about a month later, in February of 2018,

8   Plaintiff reported that his pain had been controlled.  (AR 325.)  Within the severity section of the

9   opinion, the ALJ summarized this record, and noted the following:

> 10        This same month, he underwent a left sided carpal tunnel and
>           trigger finger release of the long as well as ring fingers.  The
> 11        following month, the claimant's pain was described as controlled.
>           The wounds had fully healed, but the left sided long and ring
> 12        fingers had flexion contractures.  There was stiffness with making
>           a fist.  Diagnoses consisted of left sided carpal tunnel syndrome
> 13        (CTS), carbital tunnel syndrome, middle and ring trigger finger as
>           well as ganglion (Ex. 11F).  He was provided temporary disability
> 14        for two months in February and three months in April 2018 (Ex.
>           5F).
>
> 15

16   (AR 18.)  The post-surgical record noted that Plaintiff reported "Kern family will not pay for

17   Digi sleeves.  He called around multiple places and was told the same."  (AR 325.)  Dr. Wong

18   also advised to continue working on extending the long and ring fingers, and that if insurance

19   doesn't cover the Digi sleeves, that he can pay out of pocket, or "just work on stretching on his

20   own."  (AR 326.)

21           On April 4, 2018, Plaintiff's left hand was reevaluated.  Plaintiff reported he had not had

22   Digi sleeves made, that they were measured, but never called back.  (AR 327.)  There were no

23   notations concerning the right hand.  It was noted that Plaintiff "needs to follow-up as scheduled

24   with therapy."  (AR 328.)  The ALJ acknowledged in the Step Two section that in "April 2018,

25   the claimant continued to have some difficulty extending his long and ring fingers.  He was

26   developing contractures of the proximal interphalangeal (PIP) joints with approximately 15

27   degrees of lost motion.  The claimant was advised to follow up as scheduled with physical

28   therapy."  (AR 18.)

On July 9, 2018, Dr. Wong observed that Plaintiff had full range of motion in his left hand and the PIP joints in the fingers were more supple and easily extended; that Plaintiff had not attended therapy and had still not used any Digi compression sleeves as recommended; that Plaintiff had persistent left shoulder pain; and improvement on the left side.  (AR 329.)  Plaintiff does not appear to dispute that this July 2018 record is the first record of right hand issues, when Dr. Wong noted Plaintiff had "right hand numbness, tingling, and intermittent pain," that his "fifth digit is tender but not triggering," and "Right Upper Extremity: All negative Durkin's [with] [t]enderness over the fifth digit A1 pulley." (AR 329.)  Dr. Wong diagnosed Plaintiff with right side CTS and trigger finger of the right little finger.  (AR 329-330.)  Dr. Wong recommended that Plaintiff continue working on range of motion and strengthening on the left and continue "conservative treatment on the right including night splinting and taping the fifth digit PIP joint as needed." (AR 330.)

The ALJ correctly acknowledged in the step two section that on July 9, 2018, Plaintiff first complained of right hand and wrist symptoms.  (AR 19.)  The ALJ incorporated the following summary of the July 2018 record into the opinion:

> In July 2018, he had yet to go to physical therapy and was not using Digi sleeves.  The claimant stated that his left hand had improved, but reported right hand numbness, tingling and intermittent pain.  The fifth digit on the right was tender, but not triggering.  Examination of the left upper extremity showed full range of motion in the hand and more supple PIP joints in the fingers with easier extension.  Tinel's was positive over the ulnar nerve at the mid forearm.  Examination of the right upper extremity revealed tenderness over the fifth digit A1 pulley.  He was diagnosed with right-sided CTS and trigger finger of the right little finger.  Treatment for the right included night splinting and taping of the fifth digit PIPO joint.  The Claimant was provided four months of temporary disability for his right hand.  He was encouraged to continue working on range of motion and strengthening with respect to the left-hand (Ex. 11F).

(AR 18.)

On November 9, 2018, it appears Plaintiff visited Dr. Wong primarily for a reevaluation as well as for complaints of a painful rash, which Dr. Wong noted appeared to be shingles.  (AR 317.)  Dr. Wong's physical exam showed that Plaintiff's incision scar healed and he had full range of motion in his left hand; that the nerve was still transposed with no triggering; and

recommended that Plaintiff start physical therapy three times a week for eight weeks with massage and scar modification, range of motion, stretching, and strengthening. (AR 317.) There were no notations in the physical exam pertaining to the left hand/wrist. However, a complaint of bilateral hand numbness, tingling, and pain was noted. Temporary disability was continued for three months, with follow up in 3 months or sooner. (AR 317-318.)

On February 20, 2019, Dr. Wong wrote concerning a follow-up exam:

> He states he feels "great a[t] times and good at others[.]" He feels the cold weather has worsened his arthritis recently. He is still having numbness and tingling in the mornings on the left and essentially unchanged on the right. He wants to pursue surgery on the right, but after he finishes moving both himself and his mother . . .
>
> . . . Left Upper Extremity: Elbow incision well-healed. Nerve still transposed. Full range of motion. Palmar incision well-healed. Thenar side of the scar is a little bit robust, however it is all much softer. Full range of motion in the hand. No triggering.
>
> Right Upper Extremity: Positive Durkin's with pain and paresthesias into the fourth and fifth digits. Positive Tinel's at the cubital tunnel. No subluxation of the ulnar nerve. No triggering.

(AR 331.) Dr. Wong assessed bilateral carpal tunnel syndrome and cubital tunnel syndrome. (AR 332.) Dr. Wong recommended that Plaintiff use his left arm normally without restrictions and only avoid activities that may cause secondary injury. (AR 332.) For the right hand/wrist, Dr. Wong recommended continuing "conservative treatment," continued temporary disability for four months, with follow up in three to four months. (AR 332.)

      3.   The ALJ's Challenged Step Two Findings and Conclusions

Plaintiff summarizes the ALJ's decision regarding the hand/wrist impairments at step two as based only on: (1) the fact Plaintiff put off right hand surgery until he and his mother had moved; and (2) support from the state agency consultant's determination. Plaintiff argues that while this may appear to be a proper analysis of Plaintiff's hand impairments, the conclusion is based on a flawed recitation of the evidence, and thus the determination is not supported by substantial evidence.

/ / /

/ / /

Within the step two section, the ALJ made the following findings and determinations as to Plaintiff's right and left hand/wrist impairments:

> With respect to the claimant's bilateral CTS and trigger fingers as well as left-sided cubital tunnel syndrome and ganglion, he did well post surgical release on the left despite failing to follow through with recommended physical therapy and Digi sleeves. By July 2018, the claimant endorsed an improvement with regard to his left hand/wrist and had full range of motion (Exs. 9F, 11F). This same month, he complained of right hand/wrist symptoms for the first time. Conservative treatment was recommended. In February 2019, the claimant was encouraged to use his left arm normally without restriction. At this time, he said that he wanted to pursue right-sided surgery but wanted to wait until he was finished moving himself and his mother. There is no evidence in the record to show that the claimant followed up with any provider for his hand complaints after February 2019 (Ex. 11F). At the hearing, he testified that he was able to cook, shop and clean, including the entire bathroom.
>
> The undersigned finds that the claimant left hand/wrist impairments are nonsevere in nature because they did not meet the 12 month durational requirement of the Social Security Act since there was documented improvement in his ability to use the left hand by July 2018 and he was encouraged to use his left arm normally without restriction in February 2019 (Exs. 9F, 11F). With respect to his right hand/wrist impairments, the undersigned also find[s] these to be nonsevere in nature since the claimant decided to put off a surgical procedure until he was finished moving himself and his mother and has not followed up with a provider since (Ex. 11F). Further, his admitted ability to cook, shop and clean supports a finding that these impairments are nonsevere.
>
> The State Agency consultants' assessments found that the claimant did not have a severe impairment (Exs. 1A, 3A). The undersigned find[s] these opinions persuasive with respect to the above listed impairments because they are consistent with the evidence that shows limited treatment, no end organ damage, normal cardiovascular and respiratory examinations, controlled hypertension, uncomplicated diabetes, his acknowledgement that his renal cyst had resolved, the fact that the claimant only utilized an inhaler approximately once a month, his documented improvement with regard to his left hand by July 2018, the recommendation that he use the left arm without restrictions in February 2019, the fact the claimant put off surgery on the right until he was done moving himself and his mother, his failure to follow up with regard to his right hand after February 2019, his acknowledgment that he only experiences one headache per month that lasted for 30 minutes as well as the fact that there has been only one visit for GERD and sinusitis (Exs. 1F, 2F, 4F, 5F, 6F, 7F, 10F, 11F, 12F, testimony).
>
> The undersigned considered all of the claimant's medically

1  |  determinable impairments, including those that are not severe,
2  |  when assessing the claimant's residual functional capacity.

3  (AR 19-20.)

4      4.    <u>Plaintiff's Primary Arguments</u>

5        Plaintiff submits that the mere fact that he elected to hold off on his surgical intervention

6  does not mean the limitations caused by this impairment were not severe enough to meet the *de*

7  *minimis* hurdle of a step two evaluation.  Plaintiff argues the ALJ's reliance on the hesitation to

8  move forward with surgery until after the move is an impermissible cherry-picking of the

9  evidence.  <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1164 (9th Cir. 2014) (an ALJ may not pick and

10  choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant).

11  Plaintiff contends the ALJ relied on one indication that he put off his surgery until he finished

12  moving but ignored: that Plaintiff testified he was scheduled to have surgery on the right hand;

13  the multiple positive findings contained throughout the record; as well as Dr. Wong's repeated

14  notations that Plaintiff was unable to work.  (AR 39, 329, 331.)  Plaintiff emphasizes that

15  although Dr. Wong recommended Plaintiff use his left hand without restriction in February 2019,

16  Dr. Wong continued to find Plaintiff temporarily disabled for another four months.  (AR 331.)

17  Plaintiff argues this indicates the right hand pain alone was significant enough to cause this level

18  of disability.

19        Plaintiff contends the evidence showed as to the right hand: Plaintiff's right hand had

20  tenderness over the fifth digit A1 pulley (AR 329); there was a positive Durkin's with pain and

21  paresthesia into the fourth and fifth digits of the right hand (T 331); and he had positive Tinel's

22  at the cubital tunnel (T 331).  Plaintiff argues that given Dr. Wong continued Plaintiff's off-work

23  restrictions for his right hand, this evidence is certainly indicative of severe limitations, and the

24  ALJ improperly attempted to interpret medical records.  <u>Recio v. Berryhill</u>, CV 18-2954-E, 2018

25  WL 4859257, at *2 (C.D. Cal. Oct. 5, 2018) ("The ALJ could not properly rely on the ALJ's

26  own lay understanding to interpret medical records and the medical examination results so as to

27  gauge the functional seriousness of Plaintiff's severe impairments.").

28        Further, Plaintiff contends the ALJ's statement that she found the state agency

consultants' assessments of non-severe impairments persuasive as to Plaintiff's hand impairments (AR 20), is utterly confusing as the state agency consultants did not consider Plaintiff's carpal tunnel syndrome (AR 70), and rather only considered evidence from Dr. Bichai and the cardiologists (AR 69), neither of whom treated Plaintiff for his hand impairments. Therefore, Plaintiff submits that the state agency consultants never made any determination as to whether Plaintiff's hand impairments constituted a severe impairment., and cannot provide substantial evidence for the ALJ's conclusions as the ALJ "had to provide an inaccurate report of the assessments to scrounge up the findings she needed." (Br. 10, citing Ghanim, 763 F.3d at 1164; Ramirez v. Berryhill, 739 F. App'x 428, 431 (9th Cir. 2018) (mischaracterization of the evidence cannot provide sufficient justification for the decision).

5. The Court finds the ALJ's Step Two Determinations to be Proper and Free From Remandable Legal Error

Defendant directs the Court to the records from Dr. Wong, summarized above. Defendant emphasizes that in April and May of 2019, Plaintiff reported no recent treatment or examination by a doctor and no recent hospitalizations. (AR 223-24, 227-29). Plaintiff does not dispute this fact. Defendant thus submits that this is the extent of the evidence regarding Plaintiff's hand/wrist conditions. Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff had non-severe CTS. The Court agrees. The Court finds here that the ALJ's severity determination as to Plaintiff's right and left hand conditions was proper, and the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments. Smolen, 80 F.3d at 1290; Webb, 433 F.3d at 687.

Plaintiff does not significantly present any arguments as to the left hand/wrist and the ALJ's determination as to the left side, including the determination that it did not meet the 12-month duration requirement. (AR 19-20.) The Court finds the ALJ's determination to be supported by substantial evidence, particularly because of the fact that Plaintiff's treating doctor opined that he should resume using the left side normally in February of 2019. See Chaudhry v. Astrue, 688 F.3d 661, 664, 668, 672 (9th Cir. 2012) (ALJ properly excluded carpal tunnel

1  syndrome as a severe impairment where, despite a treating doctor's notation of carpal tunnel

2  syndrome and a trial of wrist splints under "Action Plan," as the accompanying objective

3  findings documented "[n]o wrist pain, swelling or stiffness, no wrist joint pain, no swelling of

4  the wrist joint, and no stiffness of the wrist joint," and this evidence provided no support that the

5  condition would last more than 12 months); Montijo v. Sec'y of Health & Hum. Servs., 729 F.2d

6  599, 601 (9th Cir. 1984) ("There is no evidence, however, that the May 1976 accident or the

7  Addisonian crisis caused a severe physical impairment lasting for longer than twelve months.

8  The subjective complaints of the claimant alone do not overcome his statutory burden."); Fuhrer

9  v. Berryhill, No. CV 16-4066-PLA, 2017 WL 1025163, at *5 (C.D. Cal. Mar. 16, 2017)

10 ("Because there were no signs or findings during the relevant period supporting the existence of

11 a severe medically determinable impairment that was expected to last for a continuous period of

12 at least 12 months, and the only symptoms were those reported by plaintiff, substantial evidence

13 supported the ALJ's finding that plaintiff did not meet her burden at step two to show she

14 suffered from a severe medically determinable impairment during the relevant period that is

15 expected to last for a continuous period of at least 12 months and there was no error.").

16      Despite Plaintiff's framing of the ALJ's findings as to the right hand/wrist impairments

17 as based only on: (1) the fact Plaintiff put off right hand surgery until he and his mother had

18 moved; and (2) support from the state agency consultant's determination (Br. 9), the ALJ

19 connected the fact Plaintiff was waiting until after moving with the fact that he had not followed

20 up with a medical provider since that visit.  (See AR 19 ("There is no evidence in the record to

21 show that the claimant followed up with any provider for his hand complaints after February

22 2019"); AR 20 ("the claimant decided to put off a surgical procedure until he was finished

23 moving himself and his mother and has not followed up with a provider since").)  Additionally

24 neglected in briefing is the ALJ's further reliance on the Plaintiff's admitted functional abilities

25 and the ALJ's statement that "his admitted ability to cook, shop and clean supports a finding that

26 these impairments are nonsevere."  (AR 20; AR 19 ("At the hearing, he testified that he was able

27 to cook, shop and clean, including the entire bathroom.").)

28      Again, the ALJ's sentence continues "and has not followed up with a provider since."

1    (AR 20.)  The Court finds it significant that there are no medical records proffered as to the

2    hand/wrist conditions after February of 2019.  See Aceves v. Berryhill, No. 2:17-CV-1644-EFB,

3    2018 WL 4447735, at *6 (E.D. Cal. Sept. 18, 2018) ("Despite her critique, plaintiff does not

4    offer any explanation for her failure to obtain further treatment for her shoulder.  Furthermore,

5    there is nothing in the record suggesting plaintiff was unable to obtain treatment for her shoulder

6    after September 2014 . . .  In sum, although plaintiff's shoulder condition was

7    undoubtedly severe immediately after the facture and for some months thereafter, the severity

8    did not meet the 12 month duration requirement.  Accordingly, plaintiff has failed to show that

9    the ALJ erred in finding her shoulder impairment was non-severe.").  The mere existence of an

10   impairment is insufficient proof of a disability.  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir.

11   1993.)  When applying for disability benefits it is the claimant's duty to prove that he is disabled.

12   42 U.S.C. § 423(c)(5)(A).

13           Further, even if the ALJ's reliance on the delay of surgery or lack of follow-up after

14   February 2019 did not properly provide substantial evidence for the severity finding, the Court

15   finds the ALJ's citation to daily activities is supported by substantial evidence.  As summarized

16   above and described by the ALJ, Plaintiff testified that he was able to cook, clean a full

17   bathroom by himself, and shop for groceries in a store.  (AR 20, 22-23, 45, 187-89.)  The ALJ

18   properly used the testified daily activities to support the non-severity finding.  See Tidwell v.

19   Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (ALJ properly found that claimant did not have any

20   severe impairments because even though the evidence showed that she experienced some back

21   pain as well as vaginal bleeding, she was doing the laundry, cleaning the house, vacuuming,

22   mopping, dusting and grocery shopping, activities that require "physical functioning and use of

23   her back," and each was "inconsistent with [claimant's] claim that she suffered from a severe

24   physical disability during this time"); Taylor v. Astrue, 386 F. App'x 629, 632 (9th Cir. 2010)

25   (unpublished) ("There is also substantial evidence from a variety of sources—including . . .

26   Taylor's own and her friend's reports of her daily activities since her alleged date of onset . . .

27   that directly supports the ALJ's finding that Taylor's impairments are not 'severe.' "); Roberts v.

28   Berryhill, No. 216CV1232JCMGWF, 2019 WL 952559, at *5 (D. Nev. Feb. 27, 2019) ("[T]he

1  court finds that the ALJ properly considered the lack of objective medical evidence of a severe

2  impairment, as well as evidence of plaintiff's daily living activities in determining that plaintiff's

3  impairments are not 'severe' under the Social Security Act.").

4          Overall, given the above summary of the medical records and the ALJ's description

5  thereof, the Court disagrees with the Plaintiff's contention that the ALJ "cherry-pick[ed]"

6  evidence.  As the Court discussed above, the ALJ extensively discussed the full evidence of

7  record concerning Plaintiff's interactions with Dr. Wong concerning both the left and right hand

8  and wrist impairments.  The Court agrees with Defendant that while Plaintiff's arguments focus

9  on the hesitation to move forward into surgery until after moving, Plaintiff fails to address the

10 other relevant evidence of record discussed by the ALJ, including the limited physical

11 examination findings, the fact that Dr. Wong never imposed any specific functional limitations

12 regarding his right hand, that Plaintiff had not followed up for treatment, and the activities of

13 daily living.  The Court finds Plaintiff's argument isolates a single aspect of the opinion and does

14 not take into account all of the evidence that the ALJ considered in conjunction when

15 determining that Plaintiff did not have severe hand/wrist conditions under the regulations.

16 Significantly, Plaintiff has not challenged the daily activity findings, nor the ALJ's reliance on

17 the fact that Plaintiff  did not follow up after the February 2019 visit with Dr. Wong.

18         The Court is also unconvinced by Plaintiff's argument that the ALJ improperly

19 considered the State agency medical consultants' assessment of non-severe impairments as

20 persuasive because they did not consider Plaintiff's CTS and only considered records from Dr.

21 Bichai who did not treat him for hand impairments.  While the ALJ could have specifically

22 delineated between conditions that the non-examining physicians reviewed records pertaining to,

23 the Court does not find harmful error in light of the totality of the ALJ's analysis, the medical

24 evidence of record reviewed by the state agency physicians and not reviewed, and the absence of

25 any greater functional limitation opinion from a physician.  Rather the ALJ's overall statement

26 that the opinions were persuasive with respect to the ailments discussed in the severity section of

27 the opinion is supported by substantial evidence, and the ALJ's specific other support within that

28 sentence.  Again, the ALJ made the following findings in stating the opinions to be persuasive as

1   to the conclusion that these impairments were not severe:

> The State Agency consultants' assessments found that the claimant
> did not have a severe impairment (Exs. 1A, 3A). The undersigned
> find[s] these opinions persuasive with respect to the above listed
> impairments because they are consistent with the evidence that
> shows limited treatment, no end organ damage, normal
> cardiovascular and respiratory examinations, controlled
> hypertension, uncomplicated diabetes, his acknowledgement that
> his renal cyst had resolved, the fact that the claimant only utilized
> an inhaler approximately once a month, his documented
> improvement with regard to his left hand by July 2018, the
> recommendation that he use the left arm without restrictions in
> February 2019, the fact the claimant put off surgery on the right
> until he was done moving himself and his mother, his failure to
> follow up with regard to his right hand after February 2019, his
> acknowledgment that he only experiences one headache per month
> that lasted for 30 minutes as well as the fact that there has been
> only one visit for GERD and sinusitis (Exs. 1F, 2F, 4F, 5F, 6F, 7F,
> 10F, 11F, 12F, testimony).

(AR 19-20.) While the state agency physicians did not review medical records pertaining to the hands and wrist conditions, the ALJ's conclusion that the opinions finding no severe ailments were overall persuasive to the non-severity findings is supported by substantial evidence given the listed overall factors do in fact support a finding that the non-examining physicians' ultimate conclusions are correct, even in the absence of a review by those physicians of later records pertaining to certain conditions, as an absence of records still may be a proper consideration in finding an ailment non-severe. See Elsey v. Saul, 782 Fed.Appx. 636, 637 (9th Cir. 2019) (unpublished) ("Additionally, the fact that [reviewing physician] Dr. Hale did not consider all of the evidence in his determination does not require the ALJ to discount his opinion. The regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted."). Further, in the RFC section of the opinion, the ALJ concluded that as for the impairments the ALJ did find severe, obesity and the spinal condition, the non-examining physicians did not adequately consider such ailments. The Court finds this provides additional support to conclude the ALJ's analysis was proper and that the ALJ weighed the various evidence in the record in a reasonable manner. See Smolen, 80 F.3d at 1279 ("Substantial evidence" means more than a scintilla, but less than a preponderance); Thomas, 278 F.3d at 955 ("Substantial evidence is

relevant evidence which, considering the record as a *whole*, a reasonable person might accept as adequate to support a conclusion."); <u>Burch</u>, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff cites to <u>Edlund</u>, for the proposition that the Ninth Circuit has found that the ALJ's determination that a claimant's mental impairment is not severe is unsupported by substantial evidence when it had been diagnosed by an examining psychologist. <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001), <u>as amended on reh'g</u> (Aug. 9, 2001) ("Given the uncontroverted diagnosis of the examining psychologist, Dr. Bremer, as to Edlund's symptoms of agitated depression and anxiety, we believe the ALJ lacked substantial evidence for dismissing Edlund's claim of a severe mental impairment at Step 2."). However, there, "the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining *psychologist." <u>Id.</u> at 1158–59. That is not the standard nor argument submitted on appeal here.

Finally, neither party addresses whether the ALJ's discussion of the Plaintiff's hand/wrist impairments in the RFC section means any error in the severity analysis is harmless. The Court finds that to be so, and thus any error in the severity analysis would be harmless given the ALJ's RFC analysis sufficiently discussed the hand/wrist impairments. The ALJ must consider both severe and nonsevere medically determinable impairments when determining the RFC. <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). As noted above, even if an ALJ errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers limitations resulting from the impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless. <u>Lewis</u>, 498 F.3d at 911; <u>Burch</u>,

400 F.3d 676; Petersen, 213 F. App'x at 605.

Here, the ALJ stated they "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (AR 20.) Specifically, in making the RFC assessment, the ALJ noted the following regarding Plaintiff's hand/wrist ailments:

> [Plaintiff] testified that he was unable to work in any capacity due to difficulties with his back and hands. The claimant said that his back pain was about an eight on a 10 point scale and radiated down both legs to his knees. He stated that he underwent a surgical procedure to the left wrist in 2018. Prior to the surgery, the claimant testified that his left wrist pain was a 10 on a 10 point scale. He said that after the surgical procedure, the left wrist pain decreased to an eight on a 10 point scale. The claimant stated that his right hand/wrist pain was an eight on a 10 point scale. He testified that he was right-handed . . . The claimant said that he had problems with fine and gross manipulation, but was able to open a door as well as carry a water bottle without pain. He endorsed having no ability to grip with the left hand. The claimant stated that he lived in a house with his mother. He testified that he was able to cook, shop and clean, including the entire bathroom. The claimant acknowledged having a California driver's license and said that he had difficulties driving long distances because his hands cramped up. He said that he was unable to engage in his woodworking hobby or do mechanical repairs because of his inability to grip objects.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained . . .
>
> . . . The State Agency consultants' assessments found that the claimant did not have a severe impairment (Exs. 1A, 3A). The undersigned finds these opinions to be unpersuasive because they did not adequately consider the claimant's lumbar spine impairment in combination with his obesity, which would reasonably cause some functional limitations.
>
> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the substantial weight of the objective medical evidence that demonstrated minimal treatment, the conservative treatment that consisted of only a prescription for Norco and baclofen without a referral to physical therapy or a spine specialist, the multiple occasions wherein no spinal tenderness was found upon examination, the good range of motion, the rather good extent of the claimant's activities of daily living that include cooking,

shopping, cleaning and caring for his mother as well as the fact that no treating or examining physician has provided greater functional limitations (Exs. 1F, 2F, 4F, 7F, 9F, 10F, 11F, 12F, testimony).

The undersigned finds that even if the claimant continued to use methamphetamine, he would be able to perform the range of work described above.

(AR 22-24.)   Based on the ALJ's discussion of the Plaintiff's testimony concerning the hand/wrist impairments, even if the ALJ had erred in at step two, the Court would find any error in the severity analysis to be harmless.  Lewis, 498 F.3d at 911; Burch, 400 F.3d 676; Petersen, 213 F. App'x at 605.

For all of the above reasons, the Court concludes the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments of the hand/wrists.   Webb, 433 F.3d at 687; Chaudhry, 688 F.3d at 664.  Additionally, any error in the severity analysis is harmless.  Lewis, 498 F.3d at 911.[4]

**B.     Whether the ALJ's RFC Determination is Erroneous**

Plaintiff next argues that the ALJ's RFC determination was unsupported by substantial evidence as the ALJ failed to obtain a medical opinion regarding Plaintiff's remaining ability to perform work-like functions.

1.    Legal Standard for the RFC Determination

A claimant's RFC is "the most [the claimant] can still do despite [their] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)."   Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a

---

[4]  The Court need not address Defendant's argument that Dr. Wong's temporary disability opinion is not considered a medical opinion under the regulation; and is "inherently neither valuable nor persuasive" and requires no analysis or discussion in the ALJ decision, 20 C.F.R. § 416.920b(c), (c)(3), (c)(3)(i).  Such finding is not necessary to uphold the ALJ's decision.

1   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

2   work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable,

3   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

4   and mental' supported by the record."  Thomas, 278 F.3d at 956.

5       When applying for disability benefits, the claimant has the duty to prove that she is

6   disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly

7   develop the record and to assure that the claimant's interests are considered."  Widmark v.

8   Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443

9   (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is

10  ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

11  evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242

12  F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is

13  not required to trigger the necessity to further develop the record where the record itself

14  establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

15      2.   The Court finds the ALJ's RFC Determination to be Supported by Substantial
            Evidence and Free from Remandable Legal Error

16

17      Plaintiff submits that because the only medical opinions of record were those of the state

18  agency consultants who did not provide a functional analysis of Plaintiff's impairments, the

19  ALJ's determination is based only on the ALJ's own lay interpretation of the evidence, and is

20  error.  (Br. 11-12.)  Plaintiff emphasizes the state physicians only reviewed a record that

21  contained evidence from the cardiologists and Dr. Bichai through November of 2017.  (AR 65-

22  70.)  Plaintiff submits these determinations did not address all of Plaintiff's impairments and

23  only noted examination findings of spinal tenderness (AR 69), and the ALJ found the opinions to

24  be unpersuasive as they did not adequately consider Plaintiff's spinal impairments.  (AR 23.)

25  Plaintiff argues the record was devoid of any medical opinions containing functional limitations,

26  and thus the ALJ had a duty to develop the record and obtain a functional analysis regarding all

27  of Plaintiff's impairments, that was not "stale."  See Rodriguez-Curtis v. Astrue, No. CV 10-

28  02794-VBK, 2011 WL 536598, at *3 (C.D. Cal. Feb. 15, 2011) ("Certainly, if the ALJ felt that

1    this opinion was stale, he should have developed the record and ordered another consultative

2    examination."); Arriaga v. Berryhill, No. CV-16-0755-TUC-LCK, 2018 WL 1466234, at *6 (D.

3    Ariz. Mar. 26, 2018) (granting remand where the ALJ relied exclusively on the stale opinion of a

4    non-examining consultant, and noting that the ALJ may need to obtain a current functional

5    review by a consulting examiner); Huerta v. Astrue, No. 13-CV-01210-WHO, 2014 WL

6    1866427, at *16 (N.D. Cal. May 8, 2014).

7        The Court first discusses the cases presented by Plaintiff, which the Court finds to be

8    largely distinguishable to the case at hand.  In Rodriguez, the ALJ had specifically rejected a

9    treating physician's opinion for being four years old, and the district court found the ALJ

10   improperly assessed newer medical exam findings in relation to the ALJ-assessed "stale"

11   opinion.  The court found the ALJ should have developed the record if the ALJ were to reject an

12   uncontradicted treating physician opinion for such reason:

13           The Court reaches a similar conclusion with regard to the ALJ's
             reasoning that Plaintiff's lack of narcotic pain medication or
14           physical therapy fails to support the exertional restrictions noted by
             Dr. Moses. Indeed, it is difficult to disagree with Plaintiff's
15           contention that in making such an assessment, the ALJ was
             inserting his own medical opinion, which, of course, he is not
16           qualified to do.

17           Finally, the ALJ discounts Dr. Moses' opinion because it is over
             four years old. This is followed by the ALJ's statement that
18           "[Plaintiff] has continued to obtain positive straight leg results at
             follow up appointments, ..." (AR 26.) Certainly, if the ALJ felt that
19           this opinion was stale, he should have developed the record and
             ordered another consultative examination. In any event, Dr.
20           Moses' opinions regarding Plaintiff's exertional abilities would
             appear to be not inconsistent with later medical evidence in the
21           record, and of course, there is no opinion in the record contrary to
             that of Dr. Moses.
22
             The ALJ'S rejection of the opinion of the State Agency physician
23           because it was premised on Dr. Moses' evaluation is unsupportable
             for the same reasons.
24

25   Rodriguez-Curtis v. Astrue, No. CV 10-02794-VBK, 2011 WL 536598, at *3 (C.D. Cal. Feb. 15,

26   2011).

27   / / /

28   / / /

In Arriaga, the ALJ gave "great weight" to the state reviewers that conducted a review in 2014, and rejected the only opinion from the 18 month period prior to the ALJ's decision:

> Because the Court is remanding the matter for further development, it need not rule on Arriaga's claim that the ALJ erred in not further developing the record and obtaining the testimony of a vocational expert. At the hearing, the ALJ noted that the record he was looking at was a "different animal" than had been reviewed in the earlier administrative proceedings. (AR 84.) The Court agrees. Arriaga began experiencing significant anger and depression in November 2013. (AR 444.) He first reported auditory and visual hallucinations in July 2014. (AR 464.) The state agency examiners, to whom the ALJ gave great weight, conducted their reviews in January and April 2014. (AR 412-28, 463.) Therefore, these reviewers had not seen the scope of Arriaga's 2014 mental health records documenting his developing symptoms including psychosis. The ALJ rejected the only opinion on Arriaga's functional abilities by a mental health professional (psychiatric nurse practitioner Banzinger) that had examined Arriaga in the 18 months prior to the ALJ's decision. Instead, the ALJ based the RFC entirely on the stale opinions of non-examining physicians. After the ALJ reconsiders the opinions of Banzinger and Martinez, he may need to obtain a current functional review by a consulting examiner. Additionally, the testimony of a vocational expert may be necessary after the ALJ re-determines Arriaga's non-exertional limitations.

Arriaga v. Berryhill, No. CV-16-0755-TUC-LCK, 2018 WL 1466234, at *6 (D. Ariz. Mar. 26, 2018).

While not cited by the parties, the Court notes that it has in fact recommended remand under a similar theory as presented by Plaintiff here.  However, the Court finds such case distinguishable similarly to the cases cited by Plaintiff here.  Like Arriaga, in Hoskins, the undersigned found the ALJ erred in giving great weight to the non-examining state physicians' opined RFC determinations.  The non-examining state physician opinions were dated June 19, 2014, and October 13, 2014, whereas the record contained MRIs and a treating physician exam notes with new objective findings in October of 2014, and March/April of 2016:

> However, as described previously herein, Plaintiff had subsequent lumbar and cervical MRIs conducted on October 29, 2014 (AR 460-62, 492-93), and an additional lumbar MRI on March 16, 2016 (AR 503-505). Additionally, Dr. Ereso's exam notes dated April 11, 2016, also showed new limited range of motion testing and greater limitation particularly in the shoulder, following a physical exam. (AR 510-12.) Although this evidence was considered by the ALJ (AR 27-28), this exam record and the two most recent MRIs were not reviewed by the state agency physicians, and thus, there

> is no state medical opinion addressing Plaintiff's residual functional capacity after reviewing these records. As discussed previously, although these records do not demonstrate the ALJ erred in assigning little weight to Dr. Ereso's opinions, it was error to give great weight to the state agency physicians' RFC determinations when they did not have access to these most recent records. The most recent MRIs may show additional limitations greater than demonstrated by the objective evidence available to the state physicians at the time of their review.

Hoskins v. Comm'r of Soc. Sec., No. 117CV01520LJOSAB, 2019 WL 423128, at *14 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 117CV01520LJOSAB, 2019 WL 1004573 (E.D. Cal. Feb. 28, 2019). The Court did not find this equated to error in the assigning of little weight to the opinion of the treating physician, however found error in assigning great weight to the non-examining physician opinions. Thus, in these above cases, the ALJ erred by assigning great weight to non-examining physicians' RFC assessments that had not reviewed significant objective evidence, and in the face of opposing treating physician RFC assessments. Further, and naturally, there is no clear line rule that an ALJ must completely reject any assessment made before other objective medical results appear in the record, and there has to be a limit to any requirement that an ALJ have independent medical review of objective medical testing that may come in close in time to a hearing or decision. See Elsey, 782 Fed.Appx. at 637 ("Additionally, the fact that [reviewing physician] Dr. Hale did not consider all of the evidence in his determination does not require the ALJ to discount his opinion.").

Similarly, in Fox, the undersigned found error under such theory. However, the circumstances were again more drastic:

> Nonetheless, the Court finds the ALJ erred in her RFC determination as there were objective medical testing imaging results in the record that were not analyzed by any doctor or medical expert, and no opinion as to how those medical imaging results would impact Plaintiff's ultimate RFC or limitations generally. Following the state agency's reconsideration review on September 18, 2015 (AR 71-72), Plaintiff received a CT scan on March 8, 2016, which showed advanced disc degenerations at T11-12, T12-L1, L1-L2, L2-L3, and L5-S1. (AR 474.) On June 15, 2016, Dr. Wahba opined that the CT scan showed multilevel moderate to severe spondylosis with moderate degenerative disc disease at T12-L1, L1-2, and L2-3, as well as severe degenerative disc disease at L5-S1 with foraminal stenosis bilaterally greater on the right than on the left. (AR 478.) Dr. Wahba recommended an MRI to determine if there was any focal stenosis. (Id.) The

1
2
3
4

subsequent June 24, 2016 MRI showed: (1) degenerative changes most marked at L5-S1, with a mild canal, and severe right and moderate to severe left-sided foraminal stenosis; (2) mild canal stenosis and mild to moderate bilateral foraminal stenosis at T12-L1, L1-2, L2-3, and L4-5; and (3) mild canal stenosis with no compression upon the underlying thoracic spinal cord at T10-11 and T11-12. (AR 442.)

5
6
7
8
9
10
11

The ALJ only passingly refers to the objective medical imaging results in her opinion. In reviewing the March 8, 2016 CT scan, the ALJ acknowledged it showed disc degeneration, however did not restate that it showed "advanced" disc degeneration. (AR 20-21.) In her review of the June 2016 MRI, the ALJ acknowledged that it showed mild to moderate degenerative disc disease and mild to severe stenosis, but the ALJ's only explanation of this record is that it showed no compression of the underlying spinal cord. (AR 21.) The ALJ did not explain the impact of the 2016 MRI results showing mild to severe stenosis despite Dr. Wahba's explicit recommendation to obtain an MRI to determine the presence of stenosis. (AR 21, 478.) . . .

12
13
14
15

. . . The Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Further, there is no medical opinion opining on how the most recent medical imaging would impact Plaintiff's ultimate RFC. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined her own limitations for Plaintiff. The Court finds that this was error.

16
17
18
19
20
21
22
23
24
25
26
27
28

Fox v. Comm'r of Soc. Sec., No. 119CV00146LJOSAB, 2019 WL 6724355, at *14–15 (E.D. Cal. Dec. 11, 2019), report and recommendation adopted, No. 119CV00146LJOSAB, 2020 WL 469363 (E.D. Cal. Jan. 29, 2020); see also Daniel Garcia v. Comm'r of Soc. Sec., No. 1:18-CV-00914-SAB, 2019 WL 3283171, at *7 (E.D. Cal. July 22, 2019) ("The ALJ's reliance and characterization of the cervical MRI as generally unremarkable despite the disk protrusion and straightening of the normal lordotic curvature, without a doctor or medical expert's review and analysis of the MRI to support such characterization, was not a specific and legitimate reason based on substantial evidence to reject Dr. Calhoun's opinion.  While the ALJ accurately described that the neural foramina were not compromised, the comment that the MRI was unremarkable was not proper, and the ALJ's use of the MRI as a basis to reject Dr. Calhoun's opined limitations was error.  Further, the ALJ erred in assigning great weight to non-examining state expert Dr. Trias' opinion.  Although the cervical MRI was considered by the ALJ, the MRI was not reviewed by the state agency physician, and thus, there is no state medical opinion

addressing Plaintiff's residual functional capacity that considers the cervical MRI.").

Here, for similar reasons discussed in the severity analysis of this order, the ALJ did not err in considering the non-examining state physician opinions as persuasive in one manner in the severity analysis, and finding them not persuasive as to the RFC analysis, and specifically did not err due to the fact the Plaintiff did receive medical imaging after the time of the state agency physician issue their findings.  See Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020) ("[A]lthough the non-examining state agency physicians did not review any evidence beyond August 2014, the ALJ did not err in giving great weight to the physicians' opinions.  There is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.  At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3).").

In Huerta, also cited by Plaintiff, the court found compounding error where the ALJ rejected the opinions of a treating physician, an examining consultant, and a medical expert, but relied on a "stale" opinion from a non-examining consultant to make a determination on the timing of a period of disability, that was inconsistent with the timing of the opinion and evidence relied upon in that opinion:

> More problematic, however, is that the ALJ herself determined that Huerta was disabled through May 31, 2009. Yet, the ALJ relied on Hartman's June 24, 2009 RFC (which was based on Huerta's medical records through May 2009), to find her *not* limited enough to be disabled as of June 1, 2009. The ALJ failed to explain what she found in Hartman's review or RFC to support her own changed position as to Huerta's functional capacity as of June 1, 2009. Because the ALJ does not explain why she rejected Dr. Hartman's opinion from the period of March 21, 2008 through May 31, 2009, but accepted Dr. Hartman's opinion thereafter, the ALJ's reliance on Dr. Hartman was error.
>
> In sum, the ALJ improperly discounted the opinions of Huerta's treating physician, as well as the opinion of an examining consultant and the favorable testimony of the medical examiner. Instead, the ALJ relied strongly on a stale RFC from a non-examining consultant that itself contradicted the ALJ's own determination as to Huerta's RFC through May 31, 2009. These errors impacted the RFC determination and require remand.
>
> Huerta also argues that the ALJ erred in: (i) discounting Dr.

> Ware's February 2011 RFC; (ii) discounting Dr. Sandoval's November 13, 2010 RFC as well as her testimony during the hearing; (iii) discounting Dr. Garren's April 2010 opinion as to capacity; and (iv) the ALJ's out of context reliance on Dr. Wu's opinion that Huerta's prognosis was "good," when Dr. Wu's prognosis, as Huerta's oncologist, was limited her lymphoma. These doctors provided consistent evidence supporting Huerta's symptoms and limitations, as did Huerta herself and the lay witnesses. They provide further proof, although none is needed, that remand is necessary in this case.

Huerta v. Astrue, No. 13-CV-01210-WHO, 2014 WL 1866427, at *15–16 (N.D. Cal. May 8, 2014) (footnote omitted).  The Court finds these compounding errors in the ALJ's analysis in Huerta to be wholly dissimilar to the ALJ's analysis in the case at hand.  Having preliminary discussed and found the Plaintiff's legal theory inapplicable here, the Court now turns to further discussion of the record, the parties' arguments, and the ALJ's analysis.

In addition to the state agency consultants not having access to records regarding Plaintiff's hand impairments, the consultants did not review records regarding Plaintiff's MRI results demonstrating impression on the right S1 nerve root.  Plaintiff argues the ALJ was left with no updated medical opinion to interpret the raw medical data into functional limitations, Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.' ") (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.1975)); see also Garcia, 2019 WL 3283171, at *7.  Plaintiff argues the ALJ should have obtained an updated medical opinion to interpret the raw medical data in the MRI report depicting nerve root impression into functional limitations, rather than rely on her own interpretation.

The Court first notes that in Padilla, cited by Plaintiff, the court found the ALJ improperly relied on a non-examining physician expert whose opinion the court found to be inconsistent and ambiguous:

> Here, based solely on the testimony of Dr. Gerber, the ALJ found plaintiff does not have a severe impairment or combination of impairments. See A.R. 26 ("According to Dr. Gerber, who reviewed the medical evidence of record prior to the hearing, the [plaintiff's] impairments do not meet or equal a Listing, and ... she is not functionally impaired. [¶] The undersigned agrees with Dr. Gerber's assessment."). However, in addition to opining plaintiff

does not have a severe impairment, A.R. 310–11, Dr. Gerber agreed with Dr. Siciarz's opinion that plaintiff can perform the "medium range of activity with the addition of [a] seizure precaution...." A.R. 311. These opinions of Dr. Gerber's are inconsistent and ambiguous.

When, a claimant's impairments limit her to medium work activity, such impairments are by definition "severe" since they have more than a minimal impact on the claimant's ability to lift, which is a basic work activity. *See*, e.g., *Hughes v. Barnhart*, 206 F.Supp.2d 771, 781 (W.D.Va.2002) (The claimant's "physical condition cannot be classified as nonsevere under the regulations" when "[t]he uncontradicted memedical evidence reveals that [the claimant] was restricted ... to the performance of medium work."); *Camacho v. Apfel*, 1998 WL 813409, *7 (E.D.N.Y.) ("Since lifting is itself a basic work activity, a limitation in that regard requires a finding of a severe impairment." (citations omitted)). In fact, Dr. Siciarz, with whom Dr. Gerber agreed, found plaintiff "is **limited** due to diabetes and hypertension." (emphasis added). Yet, Dr. Gerber concluded plaintiff is not limited, or does not have a severe impairment. This ambiguity should have triggered the ALJ's duty to further develop the record, and having failed to do so, the ALJ could not rely on Dr. Gerber's opinion to support his Step Two determination that plaintiff is not severely impaired. Thus, the ALJ's Step Two determination is not supported by substantial evidence.[6] *See*, e.g., *Burnett v. Barnhart*, 2004 WL 1093271, *10–11 (N.D.Ill.) (ALJ's decision not supported by substantial evidence in part because ALJ relied on testimony of medical expert without addressing internal inconsistencies in such testimony).

Padilla, 541 F. Supp. 2d at 1106–07.   Thus, the circumstances in Padilla are readily distinguishable from here.

Turning to the MRI record here, dated August 8, 2018, the record notes: "Possible disc bulge or protrusion at L5/S1 with slight impression on the descending component of the right S1 nerve root in the right lateral recess.  Consider dedicated imaging of the lumbar spine for further assessment, if clinically indicated.  Mild pubic symphysitis.  No large masses are seen in the right hemipelvis.  No evidence for inguinal hernia.  If symptoms persist, consider CT."  (AR 307.)  The physical examination on that date also noted under back, "mild spinal tenderness" and good range of motion.  (AR 307.)

/ / /

/ /

/ / /

1        In the RFC analysis section of the opinion, the ALJ made the following findings

2   regarding the course of records pertaining to Plaintiff's back impairments, which the ALJ did

3   find to be severe:

> The record does not contain any opinions from treating or
> examining physicians indicating that the claimant has limitations
> greater than those determined in this decision.
>
> The record reveals that the claimant was seen for a general medical
> checkup in January 2017. Examination of the back did not show
> any spinal tenderness and range of motion was good.  He was
> started on baclofen for muscle spasms in March 2017 . . . During a
> cardiology evaluation in April 2017, it was none of the claimant
> [sic] also had a history of methamphetamine use . . . Examination
> of the back in May 2017 did not demonstrate any spinal tenderness
> and range of motion was noted to be good.  Physical examination
> in August 2017 revealed mild spinal tenderness.  He was
> diagnosed with spondylosis and prescribed Norco . . . In August
> and September 2017, examination of the back did not show any
> spinal tenderness and range of motion was good (Ex. 4F).
>
> In August 2018, the claimant complained pf low back pain.
> Examination demonstrated mild spinal tenderness and good range
> of motion.  Pelvic MRI revealed possible disc bulge or protrusion
> at L5-S1 with slight impression on the descending component of
> the right S1 nerve root in the right lateral recess.  He was given a
> refill of Norco.  Later in the month, examination of the back did
> not reveal any spinal tenderness and range of motion was still good
> . . . In November 2018, the claimant said that he had recently
> moved to Hanford to take care of his mother after his stepfather
> passed away . . . In February 2019, he reported that he was in the
> process of moving both himself and his mother . . . The claimant
> complained of back pain in May 2019.  Examination showed
> spinal tenderness, but range of motion was good . . . His
> prescription for Norco was refilled June 2019.  Examination the
> following month demonstrated no spinal tenderness and good
> range of motion . . .
>
> . . . As for medical opinion(s) and prior administrative medical
> finding(s), the undersigned cannot defer or give any specific
> evidentiary weight, including controlling weight, to any prior
> administrative medical finding(s) or medical opinion(s), including
> those from medical sources.  The undersigned has fully considered
> the medical opinions and prior administrative medical findings as
> follows:
>
> The State Agency consultants' assessments found that the claimant
> did not have a severe impairment (Exs. 1A, 3A).  The undersigned
> finds these opinions to be unpersuasive because they did not
> adequately consider the claimant's lumbar spine impairment in
> combination with his obesity, which would reasonably cause some
> functional limitations.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the substantial weight of the objective medical evidence that demonstrated minimal treatment, the conservative treatment that consisted of only a prescription for Norco and baclofen without a referral to physical therapy or a spine specialist, the multiple occasions wherein no spinal tenderness was found upon examination, the good range of motion, the rather good extent of the claimant's activities of daily living that include cooking, shopping, cleaning and caring for his mother as well as the fact that no treating or examining physician has provided greater functional limitations (Exs. 1F, 2F, 4F, 7F, 9F, 10F, 11F, 12F, testimony).

The undersigned finds that even if the claimant continued to use methamphetamine, he would be able to perform the range of work described above.

(AR 22-23.)

The Court has reviewed the records cited by the ALJ. Plaintiff does not dispute the accuracy of the course of records pertaining to the spine before and after the MRI and the ALJ's summarization thereof. These records show: in May of 2017, Dr. Bichai noted no spinal tenderness and good range of motion in Plaintiff's back on examination (AR 22, 244); in August 2017, Dr. Bichai documented mild spinal tenderness in Plaintiff's back (AR 22, 293); in September 2017, Plaintiff visited Dr. Bichai for a refill of Norco because of low back pain, spondylosis, and shoulder pain, and during examination, Dr. Bichal noted mild spinal tenderness (AR 22, 241-242); in September 2017, Dr. Bichai noted no spinal tenderness and good range of motion in Plaintiff's back (AR 22, 290); in October 2017, Dr. Bichai observed that Plaintiff had spinal tenderness but showed good range of motion in his back (AR 22, 288); ten months later, in August 2018, Plaintiff visited Dr. Bichai with right abdominal pain that radiated to his right low back, and Dr. Bichai noted that he refilled Plaintiff's Norco prescription at a prior visit but Plaintiff forgot it in his wallet and was never filled; Dr. Bichai mentioned that Plaintiff had a renal cyst and underwent the MRI scan summarized above, and noted dedicated lumbar imagining might be needed if clinically indicated (AR 22, 307, 310); during the August 2018 examination, Dr. Bichai observed mild spinal tenderness and good range of motion, and Dr. Bichai refilled Norco stating that it must last a month (Tr. 22, 307, 310); at a later exam in

1  August 2018, Dr. Bichai observed no spinal tenderness and good range of motion in Plaintiff's

2  back, and Dr. Bichai assessed Plaintiff with spondylosis/low back pain, recommended that

3  Plaintiff continue weight loss, and refilled his Norco prescription (AR 22, 304-305, 312-313); in

4  June 2019, Plaintiff followed up and Dr. Bichai noted spinal tenderness but that Plaintiff had

5  good range of motion in his back, assessed low back pain and refilled Plaintiff's Norco

6  prescription (AR 22, 334-336); and in July 2019, Dr. Bichai observed no spinal tenderness and

7  good range of motion in Plaintiff's back (AR 22, 338).

8         Given the extent of Plaintiff's treatment records regarding his back that only shows

9  conservative treatment and minimal examination findings without referrals to physical therapy or

10  a back specialist, Defendant argues substantial evidence supports the ALJ's RFC finding for

11  medium work.  The Court agrees.  Based on the course of treatment records, the ALJ's review

12  and analysis of such records, as well as her reliance and weighing of all of the evidence of the

13  record, the Court finds no error in the fact that the consultants' opinions were issued without

14  reviewing the August 2018 MRI results, particularly considering the course of examinations and

15  treatment did not change following such date.  Again, the ALJ did not err in considering the non-

16  examining state physician opinions as persuasive in one manner in the severity analysis, and

17  finding them not persuasive as to the RFC analysis, and specifically did not err due to the fact the

18  Plaintiff did receive medical imaging after the time of the state agency physician issued their

19  findings.  See Meadows, 807 F. App'x at 647; Owen v. Saul, 808 F. App'x 421, 423 (9th Cir.

20  2020) (ALJ properly relied on consultants' assessments over two treating medical opinions

21  because "there is always some time lapse between a consultant's report and the ALJ hearing and

22  decision, and the Social Security regulations impose no limit on such a gap in time").[5]  The

23  _____

24  [5]  In Plaintiff's reply brief, Plaintiff proffers that Defendant's briefing does not mention or otherwise address the
    2018 MRI results demonstrating right S1 nerve compression in her recitation of that evidence, and that this raw data
    required interpretation into function-by-function limitations by a qualified medical expert.  The Court notes
25  Plaintiff's representation is not accurate, as in Defendant's briefing the August 2018 MRI is summarized as follows:
    "Dr. Bichai noted that Plaintiff had a renal cyst and underwent a magnetic resonance imaging (MRI) scan (Tr. 22,
26  306-307, 309-310). Dr. Bichai observed that the MRI showed a possible disc bulge or protrusion at the L5/S1
    (lumbar) level with slight impression of nerve root involvement on the right side (Tr. 22, 307, 310). Dr. Bichai noted
    to consider a dedicated imagining of the lumbar spine for further assessment if clinically indicated (Tr. 22, 307,
27  310)."  (Opp'n 6.)  The record is again mentioned in Defendant's briefing, though without the reference to the S1
    nerve, stating: "Dr. Bichai mentioned that Plaintiff had a renal cyst and underwent a MRI scan that showed a
28  possible lumbar degenerative changes (Tr. 22, 306-307, 309-310), and noted that dedicated lumbar imagining might

1    Court does not find the record to be inadequate or ambiguous, and the ALJ's RFC determination

2    was not deficient for such reason.  See Ford, 950 F.3d at 1156; Mayes, 276 F.3d at 459-60.  The

3    record was adequate for the ALJ to reach a conclusion, and the facts in this case are not similar

4    to other instances in which the ALJ was found to have a duty to further develop the record.  See

5    Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated

6    more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by

7    failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue,

8    725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimant's

9    benefits were property terminated or should have been resumed after his release from prison);

10   Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to

11   develop record where he relied on the opinion of a physician who recognized he did not have

12   sufficient information to make a diagnosis).

13          Further, as the ALJ noted, "[t]he record does not contain any opinions from treating or

14   examining physicians indicating that the claimant has limitations greater than those determined

15   in this decision."  (AR 23.)  Considering the caselaw discussed above regarding Plaintiff's theory

16   and the previous recommendations of this Court, and the Court's view of an absence of a bright

17   line rule as to when an ALJ may need to obtain further medical expert review of objective

18   medical testing results, the Court finds no error.  Plaintiff has not provided legal authority that

19   requires an ALJ to rely on a medical source opinion obtained after a certain point in the patient's

20   medical history, in order to determine the RFC.  The ALJ was not required to adopt the findings

21   or opinion of any of physician, but rather was required to determine the RFC based on all of the

22   evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from

23

24   be needed if clinically indicated (Tr. 22, 307, 310)."  (Opp'n 18.)  More importantly, as summarized above, the ALJ
     discussed the August 2018 MRI results including the "possible disc bulge or protrusion at L5-S1 with slight

25   impression on the descending component of the right S1 nerve root in the right lateral recess."  (AR 23.)  The Court
     does not find the ALJ was improperly interpreting the raw medical data and translating or incorporating the MRI

26   results into an RFC, but was rather considering that record as part of a whole continuum of treatment records
     pertaining to the back pain complaints, with the timeline of such records, as described by the ALJ, evidencing a lack

27   of change in exam findings, treatment, or follow up with further imaging, physical therapy, or referral to specialist.
     There is not an absence of medical visits following the MRI results, but rather numerous follow-up visits with no

28   such described actions taken.

1   medical sources on issues such as . . . your residual functional capacity . . . the final

2   responsibility for deciding these issues is reserved to the Commissioner."); Rounds v. Comm'r of

3   Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and

4   incorporating clinical findings into a succinct RFC"); Vertigan v. Halter, 260 F.3d 1044, 1049

5   (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to

6   determine residual functional capacity."). The Court notes that the regulations provide the

7   following guidance for utilizing evidence in assessing an RFC, and allows for ordering a

8   consultative exam "if necessary":

> (3) Evidence we use to assess your residual functional capacity.
> We will assess your residual functional capacity based on all of the
> relevant medical and other evidence. In general, you are
> responsible for providing the evidence we will use to make a
> finding about your residual functional capacity. (See §
> 404.1512(c).) However, before we make a determination that you
> are not disabled, we are responsible for developing your complete
> medical history, including arranging for a consultative
> examination(s) if necessary, and making every reasonable effort to
> help you get medical reports from your own medical sources.

15  20 C.F.R. § 404.1545(a)(3). The Court finds the ALJ had not further duty to "develop[]

16  [Plaintiff's] complete medical history," but rather the complete medical history was before the

17  ALJ when she issued her decision.

18      The Court finds the ALJ's RFC determination to be proper, reasonable, based on

19  substantial evidence in the record, and not deficient due to any lack of a certain type of medical

20  opinion issued after the date of the August 2018 MRI, nor due to the fact the non-examining state

21  physicians did not review the records pertaining to the Plaintiff's hand and wrist conditions. See

22  Brown v. Berryhill, 697 F. App'x 548, (Mem)–549 (9th Cir. 2017) ("The ALJ's determination

23  that Brown was not disabled due to carpal tunnel syndrome and inclusion of a limitation of

24  'frequent handl[ing]' in the RFC also are supported by substantial evidence. The existence of

25  Brown's carpal tunnel syndrome alone is insufficient to establish functional limitations or

26  disability . . . the records of Brown's treating physician indicate that Brown had normal strength

27  and full mobility of his hands and fingers both before and after his carpal tunnel release surgery.

28  Because the record evidence was not ambiguous and the record was sufficient to allow for proper

evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record."); Karen E. v. Berryhill, No. ED CV 17-918-SP, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) ("Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessarily required where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC determination with respect to plaintiff's lower back pain.").  The ALJ did not wholly reject or rely on the findings of these state agency physicians, but rather assigned weight to the state agency physicians according to the evidence in the record, and their applicability to the relevant analysis (*i.e.* severity vs. RFC analysis discussed above).

Accordingly, the Court finds the ALJ's RFC assessment to be based on substantial evidence in the record and free from remandable error, and Plaintiff has not demonstrated that the ALJ erred by failing to further develop the record.

**V.**

**ORDER AND RECOMMENDATION**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court is directed to randomly assign a District Judge to this action.

For the reasons explained herein, the Court finds that the ALJ did not err in her step two determination that Plaintiff's carpal tunnel syndrome and hand/wrist ailments were not severe; and did not err in making her residual functional capacity determination or in failing to develop the record in relation to the RFC determination.  The Court finds the ALJ's decision to be supported by substantial evidence in the administrative record, and free from remandable legal error.  Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's appeal from the decision of the Commissioner of Social Security be DENIED; that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Arthur Eugene Herrera; and that the Clerk of the Court be directed to close this action.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 20, 2022**

UNITED STATES MAGISTRATE JUDGE